**Andrew J. DAYTON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–9422.**

Court of Appeals of Alaska.

Jan. 16, 2009.

Daniel Lowery, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

---

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, MANNHEIMER, Judge, and STEWART, Senior Court of Appeals Judge.[1]

## OPINION

MANNHEIMER, Judge.

This case requires us to clarify the limits on a judge's discretion to dismiss litigation when the plaintiff fails to adhere to pleading deadlines. As we explain in more detail below, the superior court struck Dayton's amended petition for post-conviction relief, and then dismissed his underlying lawsuit for post-conviction relief, because the amended petition was filed almost six months after the deadline set by the court. However, the amended petition *was* filed—and it was filed before the superior court took any action to enforce the deadline. In addition, the State never alleged that its ability to respond to Dayton's claims for post-conviction relief was defeated or even hampered by the lateness of Dayton's amended petition. Under these circumstances, the tardiness of the petition was not a proper basis for the superior court to dismiss Dayton's post-conviction relief action.

### Underlying facts

Andrew J. Dayton was convicted of first-degree sexual assault and first-degree burglary. We affirmed Dayton's convictions in *Dayton v. State*, 89 P.3d 806 (Alaska App. 2004).

In December 2002, while Dayton's appeal was pending, he filed a *pro se* petition for post-conviction relief. In response, the State moved to dismiss Dayton's petition for failure to state a prima facie case for relief. Subsequently, Dayton obtained counsel to assist him in the post-conviction relief litigation, and Superior Court Judge *pro tempore* Jane F. Kauvar granted Dayton's attorney's request to stay further post-conviction relief

proceedings until this Court resolved Dayton's pending appeal.

In late April 2004, this Court issued our decision in Dayton's appeal, leading to renewed activity in Dayton's post-conviction relief litigation. On September 1, 2004, Judge Kauvar gave Dayton's attorney sixty days—until November 1, 2004 [2]—to file a supplemental petition and additional materials in support of Dayton's claim for post-conviction relief.

On January 3, 2005 (two months past the deadline), Dayton's attorney filed an affidavit from Dayton's trial counsel, Bill Murphree. Then, on April 25, 2005 (almost six months past the deadline), Dayton's attorney filed an amended petition for post-conviction relief.

Three weeks later, on June 13, 2005, the State filed a motion asking Judge Kauvar to strike Dayton's amended petition on two grounds: because it was filed late, and because it contained claims for relief that were not addressed in the trial counsel's affidavit.

On July 27, 2005, Judge Kauvar issued an order granting the State's motion to strike Dayton's amended petition for post-conviction relief. However, Judge Kauvar did not specify the basis for her order. That is, she did not say whether she had decided to strike the amended petition because it was filed late, or because it contained claims that were not addressed in the trial attorney's affidavit, or both—or for some other reason.

But eight months later, at a hearing held on March 2, 2006 to sort out the question of who would represent Dayton in this appeal, Judge Kauvar indicated that she struck the amended petition because Dayton's attorney was so tardy in filing it. The judge declared:

> *The Court:* [T]he Court ... tried many times, [made] many phone calls starting in March of '05 to see if Mr. Rice [*i.e.*, Dayton's post-conviction relief attorney] was going to respond to [the] State's [motion] to dismiss the [petition]. Each time, we were told [that] Mr. Rice was working on it. [The] Court felt she had to do some-

---

1. Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

2. October 31, 2004 was a Sunday.

thing, and the post-conviction relief [petition] was dismissed.

Judge Kauvar's explanation of her action apparently came as a surprise to Dayton's attorney. And when, at a subsequent representation hearing, the attorney expressed his surprise, Judge Kauvar reiterated that she had dismissed the amended petition because it was filed tardily:

> *Mr. Rice:* I was confus[ed as to] why the Court dismissed [the amended post-conviction relief application]. Mr. Dayton filed a [*pro se* ] petition; the D.A. opposed, [and then] I filed an amended petition [and] an affidavit from [Mr.] Murphree [Dayton's trial attorney]. . . .
>
> . . .
>
> [And] when this court issued the order dismissing the petition for post-conviction relief, I was of the opinion [that] the Court issued [that order] on the merits, rather than for want of prosecution.
>
> *The Court:* Our office called you almost weekly to [get you to] respond. . . . [I] tried to get something from you to support [Dayton's petition]. . . . It is not correct [that] you didn't know we were trying to get a response. It went on for quite a while.

In summary, even though Judge Kauvar's written order did not explain her reason for striking Dayton's amended petition, Judge Kauvar subsequently declared (twice) that she took this action because the amended petition was filed late.

*Why it was improper for the superior court to strike Dayton's amended petition for post-conviction relief*

 On appeal, the State concedes that the superior court should not have struck Dayton's amended petition for post-conviction relief. However, the State bases its concession of error on an erroneous interpretation of the law.

The State contends that, under this Court's decision in *Howarth v. State,* 13 P.3d 754 (Alaska App.2000), it would have been proper for the superior court to strike Dayton's amended petition if Dayton had been represented by a lawyer appointed at public expense. However, the State takes the position that *Howarth* does not apply to Dayton's case because Dayton had a privately retained lawyer.

In *Howarth,* the defendant had a court-appointed post-conviction relief attorney who was notified that the post-conviction relief action would be dismissed unless the attorney filed an amended petition. Despite this warning, the attorney never filed an amended petition or responded in any other fashion to the proposed dismissal.[3] In the State's brief to this Court in *Howarth,* the State took the position that, even in such circumstances, the superior court had no power to dismiss the post-conviction relief action. We disagreed:

> We agree with the State that the superior court should not have dismissed Howarth's petition [given the facts of this case], but we are hesitant to fully adopt the State's position that a trial court is powerless to dismiss a petition for post-conviction relief until the petitioner's attorney [performs one of the actions listed in Criminal] Rule 35.1(e). We believe that a court might properly dismiss a petition for post-conviction relief if both the petitioner and the petitioner's attorney obstinately refuse to comply with Rule 35.1(e).

*Howarth,* 13 P.3d at 756 (with the citations to the rule corrected to reflect the current pertinent subsections of the rule).

Based on this passage from *Howarth,* the State now concludes that the superior court has the authority to dismiss a petition for post-conviction relief based on the defendant's attorney's failure to prosecute the action, but only if two conditions are satisfied: (1) the defendant's attorney must have been appointed to represent the defendant at public expense, and (2) the attorney must "obstinately refuse" to file an amended petition or otherwise respond to the proposed dismissal of the case.

Turning to the facts of Dayton's case, the State asserts that Dayton's attorney "obstinately refused" to file an amended petition because the attorney did not file the amend-

---

3. *Howarth,* 13 P.3d at 755–56.

ed petition until months after the deadline. Nevertheless, the State suggests that the superior court may have lacked the authority to dismiss Dayton's post-conviction relief action—because Dayton's attorney was privately retained.

The State's position is premised on a misreading of *Howarth* and a misunderstanding of the phrase "obstinately refuse". Dayton's case is indeed distinguishable from the circumstances presented in *Howarth*—but not because of who was paying for Dayton's attorney. Rather, Dayton's case is different because Dayton's attorney (unlike Howarth's attorney) did not "obstinately refuse" to respond to a proposed dismissal of the post-conviction relief action.

Dayton's attorney may have had no good excuse for his delay in filing the amended petition for post-conviction relief, but Dayton's attorney ultimately *did file* the amended petition, and he filed it while the case was still pending (*i.e.,* before Judge Kauvar took any action to enforce the previously established deadline). This is the critical distinction between Dayton's case and the facts of *Howarth:* Judge Kauvar dismissed Dayton's case, not because Dayton's attorney failed to file an amended petition, but as a penalty for filing the amended petition late.

Because dismissal was used as a penalty for a late filing, Dayton's case is governed by the Alaska Supreme Court's decision in *Metcalf v. Felec Services,* 938 P.2d 1023 (Alaska 1997).

Metcalf was pursuing a worker's compensation claim. After receiving an adverse decision from the Workers' Compensation Board, Metcalf appealed the Board's decision to the superior court. Metcalf filed his brief on appeal, but he did not file it on time—and, because of this tardiness, the superior court dismissed Metcalf's appeal.

The supreme court held that the superior court acted improperly when it dismissed Metcalf's appeal based on Metcalf's failure to file his brief within the time limit specified by the superior court. The supreme court reached this conclusion because (1) Metcalf did, in fact, file the brief, and (2) there was no showing that the tardiness of Metcalf's brief prejudiced his opponents' ability to defend the appeal:

> Even though Metcalf unquestionably failed to timely file [his] brief [by the deadline specified in the court's] order, the superior court had actually received the brief more than two weeks before it entered the dismissal order.... We also note that Felec Services [*i.e.,* Metcalf's employer] and Cigna Insurance Companies [the employer's insurer] made no showing [in their motions to dismiss] that they would be prejudiced by the filing delay. For example, [the] appellees did not demonstrate that the delay would hamper their ability to controvert Metcalf's claim on its merits.

*Metcalf,* 938 P.2d at 1025.

The supreme court acknowledged that there might be circumstances where litigation-ending sanctions might be justified because of a litigant's egregious misconduct, if lesser sanctions were affirmatively found to be inadequate. But the supreme court concluded that Metcalf's case did not present those circumstances:

> Given that [Metcalf's] brief had already been lodged and that [the] appellees demonstrated no prejudice, the harsh remedy of dismissal could be justified only if there had been some controlling principle, such as a need to punish the wrongdoer, deter like conduct, preserve the integrity of the fact finding process, or protect the dignity of the court. The superior court identified no such justification. The failure to abide by the court's extension order might well have justified imposition of some sanction, and had [the] appellees demonstrated that they incurred unnecessary costs, some appropriate remedy might have been fashioned. Those circumstances themselves, however, would not justify complete dismissal of Metcalf's appeal. We also note that there is no reason to think [that the] delay worked in Metcalf's favor, such that only dismissal could prevent Metcalf from using delay to his benefit. The record does not suggest that the court considered, and rejected as ineffective, any less extreme sanction or remedy. *Cf. Underwriters at Lloyd's [of] London v. The Narrows,*

846 P.2d 118 (Alaska 1993) (setting aside [a] default judgment imposed as [a] sanction for [the] defendant's discovery violation where the trial court failed to consider the effectiveness of any lesser sanction).

*Id.*

When we apply the holding in *Metcalf* to the facts of Dayton's case, we conclude that Judge Kauvar acted improperly when she dismissed Dayton's amended petition for post-conviction relief.

It is true that Dayton's amended petition was filed late—indeed, quite late—and Dayton's attorney offered little or no justification for his failure to meet the court's filing deadline. Nevertheless, the amended petition *was* filed.

When the State filed its motion asking Judge Kauvar to strike the late-filed pleading, the State did not assert that its ability to litigate the post-conviction relief action had been prejudiced by Dayton's tardiness. Instead, the State merely argued that it was "outrageous" to allow Dayton "to amend his application at this late date".

Despite the State's failure to allege, much less prove, that it had been prejudiced because of Dayton's tardiness, Judge Kauvar imposed the litigation-ending sanction of striking the amended petition. At the time, she did so without explanation.

We acknowledge that, in her later remarks at the representation hearings of March and April 2006, Judge Kauvar explained that her staff had repeatedly contacted Dayton's attorney, asking when he might be expected to file the amended petition, and that the attorney's repeated response to these inquiries was that he was "working on it". Judge Kauvar declared that, in the face of these responses, she "felt [that] she had to do something"—and, for this reason, "the post-conviction relief motion was dismissed".

The continued inaction of Dayton's attorney might well have justified Judge Kauvar in "do[ing] something". But under *Metcalf,* even when a litigant flouts the court's deadlines, if the litigant ultimately files the required pleadings while the case is still pending, a litigation-ending sanction is not appropriate unless the litigant's opponents have been prejudiced in their ability to pursue or defend the lawsuit, or unless lesser sanctions would be ineffective to deter the offending litigant's misconduct, preserve the integrity of the fact-finding process, or protect the dignity of the court.

Judge Kauvar made no findings on any of these issues. But with regard to potential prejudice to the State, we note that the State never alleged any. And with regard to the effectiveness (or ineffectiveness) of lesser sanctions, we note that, in Judge Kauvar's later explanations of her decision to dismiss Dayton's petition, she gave no hint that she considered lesser sanctions, much less that she considered lesser sanctions and reasonably concluded that they would have been ineffective to achieve the court's aims.

Accordingly, we conclude that it was improper for Judge Kauvar to strike Dayton's amended petition for post-conviction relief.

*The State's alternative argument that the superior court's action was harmless error*

■ The State argues that even if it was error for Judge Kauvar to strike Dayton's amended petition for post-conviction relief, this error was harmless because the amended petition fails to state a prima facie case for relief. In particular, the State argues that the amended petition asserts claims of ineffective assistance of counsel that were not addressed in the affidavit filed earlier by Dayton's trial attorney.

Judge Kauvar has made no ruling on this issue. Moreover, even assuming that the State is correct, the deficiency in Dayton's amended petition could potentially be cured by having Dayton's trial attorney respond to the claims contained in the amended petition. Given the procedural history of this case, we have doubts as to whether Dayton has had a proper opportunity to respond to any arguable defects in his amended petition.

For these reasons, we can not say that the superior court's action was harmless error.

*Conclusion*

The superior court's decision to strike Dayton's amended petition for post-conviction relief is REVERSED. The superior court shall hold further proceedings on the amended petition. At that time, the State may pursue its motion to dismiss the amended petition for failure to state a prima facie case for relief.

BOLGER, Judge, not participating.